# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                   Case No. 06-10251-DHW
                                                        Chapter 13
FREDRICK LEO MORRIS, JR.

      Debtor.

## MEMORANDUM OPINION

Before the court is DaimlerChrysler Financial Services Americas, LLC's ("DaimlerChrysler") objection to the confirmation of Fredrick Leo Morris's ("debtor" or "Morris") chapter 13 plan. At issue is whether the debtor's plan may properly strip down the lien of DaimlerChrysler, that is, bifurcate the claim into secured and unsecured components.

## Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from the United States District Court for this district's order referring all title 11 matters to the Bankruptcy Court. Further, because this matter involves the confirmation of a plan, a core proceeding under 28 U.S.C. § 157(b)(2)(L), this court's jurisdiction is extended to the entry of a final order or judgment.

## Facts

The facts are undisputed. Morris filed this chapter 13 case on March 31, 2006. Morris is married, but his wife is not a joint debtor in this bankruptcy proceeding.

Morris and his wife jointly own a 2004 Dodge Durango. The purchase of that vehicle was financed by DaimlerChrysler within 910 days preceding this bankruptcy case. Both Morris and his wife are liable on the debt. DaimlerChrysler holds a purchase-money security interest in the Durango. Morris's wife traded in her car for the Durango.

The Durango is used almost exclusively by Morris's wife. While

Morris is an occasional passenger in the Durango, he rarely drives it. Morris drives a 2003 Chevrolet Silverado, which also is being paid for through the chapter 13 plan.

Morris is disabled, and since 2004, he has no income of his own. His wife's earnings constitute the only income of the household. Morris's plan will be funded entirely from his wife's earnings.

In his plan, Morris values the Durango at $17,000. The debt to DaimlerChrysler is approximately $24,500. The plan proposes that $17,000 of the claim be treated as secured and paid in full with interest at 8%. The plan treats the balance of the claim as unsecured. Unsecured creditors will not be paid in full under the plan. Instead, unsecured creditors will receive a pro rata distribution from $16,560.

## Conclusions of Law

The court must confirm a chapter 13 plan if the provisions of 11 U.S.C. § 1325 are satisfied. The treatment of secured claims is prescribed in subsection (a)(5).[1]

---

[1] 11 U.S.C. § 1325(a)(5) provides:

(5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that—
      (I) the holder of such claim retain the lien securing such claim until the earlier of—
         (aa) the payment of the underlying debt determined under nonbankruptcy law; or
         (bb) discharge under section 1328; and
      (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
    (iii) if—
      (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

Recently, § 1325(a) was amended by the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* (Pub. L. No. 109-8) ("BAPCPA"). The relevant text of the statute now provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in Section 30102 of title 49) **acquired for the personal use of the debtor**, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a) (hanging, unnumbered paragraph at the end of the subsection) (emphasis added). This court has previously held that the effect of this provision is to prevent the bifurcation of qualified claims into secured and unsecured components. *See In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006); *In re Wright*, 338 B.R. 917 (Bankr. M.D. Ala. 2006).

Here, the parties do not contest that DaimlerChrysler has a purchase-money security interest in the Durango or that the debt was incurred within 910 days of the bankruptcy. Rather, the dispute lies with whether the vehicle was acquired for the debtor's personal use.

Morris contends that because the Durango was purchased for his wife, it was not purchased for his personal use. Hence, Morris contends that the hanging paragraph does not apply and that the claim of DaimlerChrysler is subject to bifurcation. In support of that contention, Morris cites to the case of *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006). The facts in *Jackson* are similar to the case at bar.

---

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
(C) the debtor surrenders the property securing such claim to such holder.

3

In *Jackson* the court employed the familiar rule of statutory construction that requires a court to ". . . enforce the plain language of the statute unless doing so leads to an absurd result." *Id.* at 925 (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed. 2d 1024 (2004). The *Jackson* court could find no ambiguity in the phrase "personal use of the debtor" and went on to define the word "personal" to mean "'[o]f or relating to a particular person; private." *Id.* at 926 (quoting American Heritage Dictionary of the English Language (4th ed. 2000)). Following this definition, the court concluded that because the car was purchased for the use of the debtor's wife who was not a debtor, the hanging paragraph of § 1325(a) did not apply.

This court, however, is not as certain as the *Jackson* court that the phrase "personal use" as used in § 1325 is without ambiguity or at least subject to another construction. Indeed, other courts have defined the phrase differently distinguishing property acquired for personal use from that acquired for commercial or profit making purposes. *Cypher Chiropractic Center v. Runski (In re Runski)*, 102 F.3d 744, 747 (4th Cir. 1996) (holding that "property used for business purposes or with a profit motive is not 'property intended primarily for personal . . . use' within the meaning of § 722"); *In re Lowder*, 2006 WL 1794737 (Bankr. D. Kan. 2006) (holding that the hanging paragraph of § 1325(a) does not apply if the vehicle was acquired for business purposes).

This court is convinced that the better construction of the phrase "personal use" is one characterizing the use as non-commercial. Nevertheless, notwithstanding how the phrase "personal use" is defined, that use, by the express language of the statute, must be by the debtor.

Because the instant vehicle was purchased for the debtor's wife and not for the noncommercial use of the debtor, the provisions of the hanging paragraph of § 1325(a) do not apply and the debtor's plan may properly bifurcate Daimler Chrysler's claim into secured and unsecured components.

4

The court recognizes that this holding may have little practical effect in this case. Morris's wife is a codebtor on the obligation to Daimler Chrysler. 11 U.S.C. § 1301 mandates termination of the codebtor stay in chapter 13 cases to the extent that the plan does not fully pay a consumer debt guaranteed by the codebtor. *See* 11 U.S.C. § 1301(c)(2). Here, Morris's plan seeks not only to bifurcate the claim but to pay only a part of the unsecured portion. Daimler Chrysler would be entitled to relief from the codebtor stay in order to pursue Morris's spouse for the amount of the claim not paid through the plan. Therefore, the creditor's claim is ultimately entitled to full payment.

## Conclusion

For these reasons, the court concludes that Daimler Chrysler's objection to the confirmation of Morris's chapter 13 plan must be overruled. Pursuant to Fed. R. Bankr. Proc. 9021, a separate order consistent with this opinion will enter overruling the objection.

Done this 11th day of August, 2006.

/s/ Dwight. H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Michael D. Brock, Debtor's Attorney
   Carrie Ann Rohrscheib, Creditor's Attorney
   Curtis C. Reding, Trustee

5